Thiago Coelho, SBN 324715
thiago@wilshirelawfirm.com
Binyamin I. Manoucheri, SBN 336468
binyamin@wilshirelawfirm.com
**WILSHIRE LAW FIRM**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiff Flor Jimenez*

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLOR JIMENEZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SHASHI GROUP LLC, a California limited liability company; SHASHI GROUP HOLDING, LLC, a California limited liability company; and DOES 1 to 10, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT**<br>1. VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. §12181<br>2. VIOLATIONS OF THE UNRUH CIVIL RIGHTS ACT<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Flor Jimenez ("Plaintiff") brings this action based upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigations of her attorneys.

## NATURE OF THE ACTION

1. Plaintiff is a visually impaired and legally blind person who requires screen-reading software to read website content using her computer. Plaintiff uses the terms "blind" or "visually impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no vision.

2. Plaintiff brings this Complaint to secure redress against Defendant Shashi Group LLC and Defendant Shashi Group Holding, LLC (hereafter jointly "Defendant") and DOES 1-10, for its failure to design, construct, maintain, and operate its website and mobile application ("Mobile App" or "Mobile Application") to be fully and equally accessible to and independently usable by Plaintiff. Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered thereby and in conjunction with its physical location, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("UCRA").

3. Because Defendant's website, https://www.shashihotel.com/, (the "website" or "Defendant's website"), and Mobile App, which is a separate portal of access to Defendant's products and services, are not fully or equally accessible to Plaintiff, a blind and visually impaired consumer, resulting in violation of the ADA, Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's website and Mobile App will become and remain accessible to Plaintiff.

**THE PARTIES**

4. Plaintiff, at all times relevant and as alleged herein, is a resident of California, County of Solano. Plaintiff is a legally blind, visually impaired handicapped person, and a member of a protected class of individuals under the ADA, pursuant to 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

5. Defendant is a California limited liability company, with its headquarters in Cupertino, California. Defendant's servers for the website are in the United States. Defendant conducts a large amount of its business in California, and the United States as a whole. The physical location where Defendant's goods and services are sold to the public constitutes a place of public accommodation. Defendant's hotel provides to the public important goods and services. Defendant's website and Mobile App provide consumers with access to a luxurious urban resort with "seamlessly integrated indoor-outdoor spaces with elevated dining experiences, lifestyle amenities, co-working areas, and a perfect social club experience…". Consumers can access information regarding Defendant's selection of rooms, dining options, travel packages, meeting

rooms and venues, amenities, Defendant's recommended local attractions and activities, Defendant's photo gallery, and reservations. Consumers can also access information regarding Defendant's contact information, Shashi cash—Defendant's rewards program, Defendant's Mobile App, email subscriptions, and Defendant's social media webpages.

6. Plaintiff is unaware of the true names, identities, and capacities of Defendants sued herein as DOES 1 to 10. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of DOES 1 to 10 if and when ascertained. Plaintiff is informed and believes, and thereupon alleges, that each Defendant sued herein as a DOE is legally responsible in some manner for the events and happenings alleged herein and that each Defendant sued herein as a DOE proximately caused injuries and damages to Plaintiff as set forth below.

7. Defendant's hotel is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

8. The website, https://www.shashihotel.com/, and Mobile App are a service, privilege, or advantage of Defendant's services, products, and locations.

**JURISDICTION AND VENUE**

9. Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Eastern District of California that caused injury, and violated rights prescribed by the ADA and UCRA, to Plaintiff. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in the Eastern District of California. Specifically, on several separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities, goods and services of Defendant's website and Mobile App in Solano County. The access barriers Plaintiff has encountered on Defendant's website and Mobile App have caused a denial of Plaintiff's full and equal access multiple times in the past and now deter Plaintiff on a regular basis from accessing Defendant's website and Mobile App. Similarly, the access barriers Plaintiff has encountered on Defendant's website and Mobile App have impeded Plaintiff's full and equal enjoyment of goods and services offered at Defendant's brick-and-mortar location.

///

10. This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over Defendant because it conducts and continues to conduct a substantial and significant amount of business in the State of California, County of Solano, and because Defendant's offending website and Mobile App are available across California.

12. Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District, Defendant conducts and continues to conduct a substantial and significant amount of business in this District, Defendant is subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

13. Defendant owns, operates and maintains a brick-and-mortar hotel location in the State of California. Defendant's hotel offers goods and services to the public. Defendant also offers goods and services to the public through the Website and Mobile App. Defendant's brick-and-mortar hotel location, website and Mobile App are integrated and are public accommodations pursuant to 42 U.S.C. § 12181(7).

**THE AMERICANS WITH DISABILITIES ACT AND THE INTERNET**

14. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually impaired persons alike.

15. In today's tech-savvy world, blind and visually impaired people have the ability to access websites and mobile applications using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer, laptop, tablet or phone screen. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually impaired person may independently access the internet. Unless websites and mobile applications are designed to be read by screen-reading software, blind and

visually impaired persons are unable to fully access websites and mobile applications, and the information, products, and services contained thereon.

16. Blind and visually impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech, otherwise known as "JAWS," is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer. For Apple based products, "Voiceover" is a similar screen-reading software program for electronic devices.

17. For screen-reading software to function, the information on a website and mobile application must be capable of being rendered into text. If the website and mobile application's content is not capable of being rendered into text, the blind or visually impaired user is unable to access the same content available to sighted users.

18. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published Success Criteria for version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1" hereinafter). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually impaired people. These guidelines are adopted, implemented and followed by most large business entities who want to ensure their websites are accessible to users of screen-reading software programs. Though WCAG 2.1 has not been formally adopted as the standard for making websites accessible, it is one of, if not the most, valuable resource for companies to operate, maintain, and provide a website that is accessible under the ADA to the public.

19. Likewise, a similar resource for Mobile Apps is WCAG2ICT, which applies WCAG 2.0 to non-web information and communication technologies. WCAG 2.0 is a normative web standard. WCAG2ICT provides guidance on the application of WCAG 2.0 principles, guidelines, and success criteria to non-web documents and software. WCAG2ICT was developed to provide an authoritative interpretation of how WCAG 2.0 can apply in different contexts.

1  WCAG2ICT is a valuable resource for companies to operate, maintain, and provide that a Mobile
2  App is accessible under the ADA to the public.

3      20.    Within this context, the Ninth Circuit has recognized the viability of ADA claims
4  against commercial website owners/operators with regard to the accessibility of such websites.
5  *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905-06 (9th Cir. 2019*), cert. denied*, 140 S.Ct.
6  122, 206 L. Ed. 2d 41 (2019).  This is in addition to the numerous courts that already recognized
7  such application.

8      21.    Each of Defendant's violations of the Americans with Disabilities Act is likewise
9  a violation of the Unruh Civil Rights Act.  Indeed, the Unruh Civil Rights Act provides that any
10 violation of the ADA constitutes a violation of the Unruh Civil Rights Act.  Cal. Civ. Code, §
11 51(f).

12     22.    Further, Defendant's actions and inactions denied Plaintiff full and equal access to
13 its accommodations, facilities, and services.  A substantial motivating reason for Defendant to
14 deny Plaintiff access was the perception of Plaintiff's disability.  Defendant's denial of Plaintiff's
15 accessibility was a substantial motivating reason for Defendant's conduct.  Plaintiff was harmed
16 due to Defendant's conduct.  Defendant's actions and inactions were a substantial factor in
17 causing the lack of access to Plaintiff.  Unruh Civil Rights Act, Cal. Civ. Code, § 51.

18     23.    Inaccessible or otherwise non-compliant websites and mobile applications pose
19 significant access barriers to blind and visually impaired persons.  Common barriers encountered
20 by blind and visually impaired persons include, but are not limited to, the following:

    a. A text equivalent for every non-text element is not provided;

    b. Title frames with text are not provided for identification and navigation;

    c. Equivalent text is not provided when using scripts;

    d. Forms with the same information and functionality as for sighted persons are not provided;

    e. Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

    f. Text cannot be resized without assistive technology up to 200 percent without

     loss of content or functionality;

g. If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h. Web pages do not have titles that describe the topic or purpose;

i. The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j. One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k. The default human language of each web page cannot be programmatically determined;

l. When a component receives focus, it may initiate a change in context;

m. Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n. Labels or instructions are not provided when content requires user input;

o. In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique;

p. Inaccessible Portable Document Format (PDFs); and

q. The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

**FACTUAL BACKGROUND**

24. Defendant offers the website, https://www.shashihotel.com/, to the public. Defendant also offers a Mobile App to the public. The website and Mobile App offer features which should allow all consumers to access the goods and services which Defendant offers in

connection with its physical location. The goods and services offered by Defendant include but are not limited to the following: Defendant's selection of rooms such as the deluxe king, premium king, two kings, deluxe king – accessible, premium king – accessible, and two kings – accessible; Defendant's dining options which include The Emerald Hour, Broma, Carte Blanche, and the Belle Terre; Defendant's travel packages which include the bed and breakfast package, staycation package, reserve three nights and receive fourth night free package, and the pet package; Defendant's meeting rooms and venues including the flexible co-working spaces, pods, Napa Sonoma room, Napa room, pool deck, and the patio at the emerald hour; Defendant's room amenities including the Shashi mobile app, wireless charging pad, premium tv channels, Chromecast, king beds in all rooms, complimentary wi-fi, luxury bed linens, custom bath products, soft cotton slippers, and unlimited bottled water; Defendant's other amenities include mobile check-in, express check-in (mobile key), express checkout, valet service, bike lockers, on-request steam & press service, on-request dry cleaning and laundry, one-click requests through the app, and pet friendly rooms; Defendant's recommended local attractions and activities such as the shoreline park, shoreline lake, 18-hole shoreline golf links style, bird sanctuary, Rengstorff house, Googleplex, computer history museum, NASA Ames research center, and shoreline amphitheater; Defendant's photo gallery, and reservation system. Consumers can further access information about Defendant's contact information, Shashi cash, Defendant's Shashi App, Defendant's email subscriptions, Defendant's social media webpages such as Facebook, Instagram, and TikTok.

25.   Based on information and belief, it is Defendant's policy and practice to deny Plaintiff access to Defendant's website and Mobile App and therefore to specifically deny the goods and services that are offered and integrated within Defendant's hotel. Due to Defendant's failure and refusal to remove access barriers on its website and Mobile App, Plaintiff has been and is still being denied equal and full access to Defendant's hotel and the numerous goods, services, and benefits offered to the public through Defendant's website and Mobile App.

///

///

**DEFENDANT'S BARRIERS ON UNRUH CIVIL RIGHTS ACT, CAL. CIV. CODE § 51(f) DENY PLAINTIFF ACCESS**

26. Plaintiff is a visually impaired and legally blind person, who cannot use a computer, laptop, tablet or smartphone without the assistance of screen-reading software. However, Plaintiff is a proficient user of the JAWS or NV ACCESS screen-reader(s) as well as Mac's VoiceOver and uses it to access the internet. Plaintiff has visited https://www.shashihotel.com/ on several separate occasions using the JAWS and/or VoiceOver screen-readers.

27. During Plaintiff's numerous visits to Defendant's website and Mobile App, Plaintiff encountered multiple access barriers which denied Plaintiff full and equal access to the facilities, goods, and services offered to the public and made available to the public on Defendant's website and Mobile App. Due to the widespread access barriers Plaintiff encountered on Defendant's website and Mobile App, Plaintiff has been deterred, on a regular basis, from accessing Defendant's website and Mobile App. Similarly, the access barriers Plaintiff has encountered on Defendant's website and Mobile App have deterred Plaintiff from visiting Defendant's physical location.

28. While attempting to navigate Defendant's website, Plaintiff encountered multiple accessibility barriers for blind or visually impaired people that include, but are not limited to, the following:

    a. Lack of Alternative Text ("alt-text"), or a text equivalent. Alt-text is invisible code embedded beneath a graphic or image on a website that is read to a user by a screen-reader. For graphics or images to be fully accessible for screen-reader users, it requires that alt-text be coded with each graphic or image so that screen-reading software can speak the alt-text to describe the graphic or image where a sighted user would just see the graphic or image. Alt-text does not change the visual presentation, but instead a text box shows when the cursor hovers over the graphic or image. The lack of alt-text on graphics and images prevents screen-readers from accurately vocalizing a description of the

image or graphic;

b. Empty Links that contain No Text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen-reader users;

c. Redundant Links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen-reader users; and

d. Linked Images missing alt-text, which causes problems if an image within a link does not contain any descriptive text and that image does not have alt-text. A screen reader then has no content to present the user as to the function of the link, including information or links for and contained in PDFs.

29. Recently in 2022, Plaintiff attempted to do business with Defendant on Defendant's website and Mobile App and Plaintiff encountered barriers to access on Defendant's website. Plaintiff has visited prior iterations of the website, https://www.shashihotel.com/, and also encountered barriers to access on Defendant's website.

30. Despite past and recent attempts to do business with Defendant on its website and Mobile App, the numerous access barriers contained on the website and Mobile App and encountered by Plaintiff have denied Plaintiff full and equal access to Defendant's website and Mobile App. Plaintiff, as a result of the barriers on Defendant's website and Mobile App continues to be deterred on a regular basis from accessing Defendant's website and Mobile App. Likewise, based on the numerous access barriers Plaintiff has been deterred and impeded from the full and equal enjoyment of goods and services offered in Defendant's hotel.

**DEFENDANT'S WEBSITE AND MOBILE APP HAVE SUFFICIENT NEXUSES TO DEFENDANT'S HOTEL LOCATION TO SUBJECT THE WEBSITE AND MOBILE APP TO THE REQUIREMENTS OF THE AMERICANS WITH DISABILITIES ACT**

31. In the Ninth Circuit a denial of equal access to a website can support an ADA claim if the denial has prevented or impeded a visually impaired plaintiff from equal access to, or enjoyment of, the goods and services offered at the defendant's physical facilities. See *Martinez*

*v. San Diego County Credit Union*, 50 Cal. App. 5th, 1048, 1063 (2020) (citing *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905-06 (9th Cir. 2019)).

32. Defendant's website is subject to the ADA because the goods and services offered on the website are an extension of the goods and services offered in Defendant's brick-and-mortar hotel. For example, the goods and the services which can be procured online are available for purchase in Defendant's brick-and-mortar hotel. Thus, since the website "facilitate[s] access to the goods and services of a place of public accommodation", the website falls within the protection of the ADA because the website "connects customers to the goods and services of [Defendant's] physical" hotel. *Robles*, 913 F.3d at 905.

33. Defendant's website is replete with barriers, including but not limited to, form fields that are unproperly labeled or contain incorrect instructions. For example, Plaintiff could not use her screen reader to review Defendant's calendar to select dates for her upcoming trip. As a result, Plaintiff who desired to find more information about Defendant's available dates and complete a booking, could not complete her transaction as a sighted person could. If Defendant had sufficiently coded the website to be readable by Plaintiff's screen-reader, Plaintiff would have been able to interact with these elements and complete a booking as a sighted person could.

34. Similarly, Defendant's Mobile App is replete with barriers, including but not limited to, buttons that did not have an accessible name. As a result, Plaintiff who desired to review the rooms available through the Mobile App, could not access the information as a sighted person could. When a button does not have an accessible name, screen readers announce it as "button", making it unusable for users who rely on screen-readers, like Plaintiff. If Defendant had sufficiently coded the Mobile App to be readable by Plaintiff's screen-reader, Plaintiff would have been able to interact with these elements and access Defendant's goods and services as a sighted person would.

35. Accordingly, Plaintiff was denied the ability to browse Defendant's website and Mobile App in order to obtain sufficient information about Defendant's available rooms and complete a booking because Defendant failed to have the proper procedures in place to ensure that content uploaded to the website and Mobile App contained the proper coding to convey the

meaning and structure of the website and Mobile App, and the goods and services provided by Defendant.

## DEFENDANT MUST REMOVE BARRIERS TO ITS WEBSITE AND MOBILE APP

36. Due to the inaccessibility of the Defendant's website and Mobile App, blind and visually impaired customers such as the Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities and services the Defendant offers to the public on its website and Mobile App. The access barriers the Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past and now deter Plaintiff on a regular basis from accessing the website and Mobile App.

37. These access barriers on Defendant's website and Mobile App have deterred Plaintiff from enjoying the goods and services of Defendant's brick-and-mortar hotel which are offered through Defendant's website and Mobile App in a full and equal manner to sighted individuals. Plaintiff intends to visit the Defendant's location in the near future if Plaintiff is able to gain equal access to Defendant's website and Mobile App as a sighted person can.

38. If the website and Mobile App was equally accessible to all, Plaintiff could independently navigate the website and Mobile App and complete a desired transaction, as sighted individuals do.

39. Plaintiff, through Plaintiff's attempts to use the website and Mobile App, has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually impaired people.

40. Because simple compliance with WCAG 2.1 and WCAGICT would provide Plaintiff with equal access to the website and Mobile App, Plaintiff alleges that Defendant engaged in acts of intentional discrimination, including, but not limited to, the following policies or practices: constructing and maintaining a website and Mobile App that are inaccessible to visually impaired individuals, including Plaintiff; failing to construct and maintain a website and Mobile App that are sufficiently intuitive so as to be equally accessible to visually impaired individuals, including Plaintiff; and failing to take actions to correct these access barriers in the

face of substantial harm and discrimination to blind and visually impaired consumers, such as Plaintiff, as a member of a protected class.

41. The Defendant uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination against others, as alleged herein.

42. The ADA expressly contemplates the injunctive relief that plaintiff seeks in this action. In relevant part, the ADA requires:

> In the case of violations of … this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities …. Where appropriate, injunctive relief shall also include requiring the … modification of a policy …. 42 U.S.C. § 12188(a)(2).

43. Because Defendant's website and Mobile App have never been equally accessible and because Defendant lacks a corporate policy that is reasonably calculated to cause the Defendant's website and Mobile App to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring the Defendant to retain a qualified consultant acceptable to Plaintiff to assist Defendant to comply with WCAG 2.1 and WCAGICT guidelines for Defendant's website and Mobile App. The website and Mobile App must be accessible for individuals with disabilities who use desktop computers, laptops, tablets, and smartphones. Plaintiff seeks that this permanent injunction require Defendant to cooperate with the agreed-upon consultant to: train Defendant's employees and agents who develop the website on accessibility compliance under the WCAG 2.1 and WCAGICT guidelines; regularly check the accessibility of the website and Mobile App under the WCAG 2.1 and WCAGICT guidelines; regularly test user accessibility by blind or vision-impaired persons to ensure that the Defendant's website and Mobile App comply under the WCAG 2.1 and WCAGICT guidelines; and develop an accessibility policy that is clearly disclosed on the Defendant's website and Mobile App. The above provides contact information for users to report accessibility-related problems and require that any third-party vendors who participate on the Defendant's website and Mobile App to be fully accessible to the disabled by conforming with WCAG 2.1 and WCAGICT.

44. If Defendant's website and Mobile App were accessible, Plaintiff could independently access information about the services offered and goods available for online

COMPLAINT AND DEMAND FOR JURY TRIAL

purchase.

45. Although Defendant may currently have centralized policies regarding maintaining and operating Defendant's website and Mobile App, Defendant lacks a plan and policy reasonably calculated to make Defendant's website and Mobile App fully and equally accessible to, and independently usable by, blind and other visually impaired consumers.

46. Defendant has, upon information and belief, invested substantial sums in developing and maintaining Defendant's website and Mobile App and Defendant has generated significant revenue from Defendant's website and Mobile App.  These amounts are far greater than the associated cost of making Defendant's website and Mobile App equally accessible to visually impaired customers.

47. Without injunctive relief, Plaintiff will continue to be unable to independently use Defendant's website and Mobile App resulting in a violation of their rights.

## COUNT I

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12181 ET SEQ.

48. Plaintiff alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 47, inclusive, of this Complaint as if set forth fully herein.

49. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12181 *et seq*., provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

50. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations"; and "a failure to take such steps

as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).  "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense." 28 C.F.R. § 36.303(a).  In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

51.    Defendant's hotel location is a "public accommodation" within the meaning of 42 U.S.C. § 12181 *et seq*.  Defendant generates millions of dollars in revenue from the sale of its amenities and services, privileges, advantages and accommodations in California through its location and related services, privileges, advantages, and accommodations, and its website, https://www.shashihotel.com/, along with Defendant's Mobile App, are a service, privilege, advantage and accommodation provided by Defendant that is inaccessible to customers who are visually impaired like Plaintiff.  This inaccessibility denies visually impaired customers full and equal enjoyment of and access to the facilities and services, privileges, advantages, and accommodations that Defendant made available to the non-disabled public.  Defendant is violating the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*., in that Defendant denies visually impaired customers the services, privileges, advantages, and accommodations provided by https://www.shashihotel.com/ and Defendant's Mobile App.  These violations are ongoing.

52.    Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff requests relief as set forth below.

# COUNT II

## VIOLATIONS OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 ET SEQ.

53. Plaintiff alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 52, inclusive, of this Complaint as if set forth fully herein.

54. California Civil Code § 51 *et seq*. guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendant is systematically violating the UCRA, Civil Code § 51 *et seq*.

55. Defendant's hotel is a "business establishment" within the meaning of the California Civil Code § 51 *et seq*. Defendant generates millions of dollars in revenue from the sale of its services in California through its physical location and related services and https://www.shashihotel.com/, is a service provided by Defendant that is inaccessible to customers who are visually impaired like Plaintiff. This inaccessibility denies visually impaired customers full and equal access to Defendant's facilities and services that Defendant makes available to the non-disabled public. Defendant is violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq*., in that Defendant is denying visually impaired customers the services provided by https://www.shashihotel.com/. These violations are ongoing.

56. Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability in violation of the Unruh Civil Rights Act, Cal. Civil Code § 51 *et seq*. in that: Defendant has constructed a website and Mobile App that is inaccessible to Plaintiff; maintains the website and Mobile App in this inaccessible form; and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

57. Defendant is also violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq*. in that the conduct alleged herein likewise constitutes a violation of various provisions of the ADA, 42 U.S.C. § 12101 *et seq*. Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA shall also constitute a violation of the

Unruh Civil Rights Act.

58. The actions of Defendant were and are in violation of the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*; therefore, Plaintiff is entitled to injunctive relief remedying the discrimination.

59. Plaintiff is also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense.

60. Plaintiff is also entitled to reasonable attorneys' fees and costs.

61. Plaintiff is also entitled to a preliminary and permanent injunction enjoining Defendant from violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*, and requiring Defendant to take the steps necessary to make https://www.shashihotel.com/ readily accessible to and usable by visually impaired individuals.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

A. A preliminary and permanent injunction pursuant to 42 U.S.C. § 12188(a)(1) and (2) and section 52.1 of the California Civil Code enjoining Defendant from violating the Unruh Civil Rights Act, the ADA and requiring Defendant to take the steps necessary to make https://www.shashihotel.com/ and Defendant's Mobile App readily accessible to and usable by visually impaired individuals;

B. An award of statutory minimum damages of $4,000 per offense per person pursuant to section 52(a) of the California Civil Code.

C. For attorneys' fees and expenses pursuant to California Civil Code §§ 52(a), 52.1(h), and 42 U.S.C. § 12205;

D. For pre-judgment interest to the extent permitted by law;

E. For costs of suit; and

F. For such other and further relief as the Court deems just and proper.

///

///

# DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself, hereby demands a jury trial for all claims so triable.

Dated: June 29, 2022                                         Respectfully Submitted,

/s/ *Thiago M. Coelho*
Thiago M. Coelho, Esq.
Binyamin I. Manoucheri, Esq.
**WILSHIRE LAW FIRM**
*Attorneys for Plaintiff*